[No. G004819. Fourth Dist., Div. Three. Feb. 24, 1989.]

JOHN G. FLYNN, Cross-complainant and Appellant, v. ACHILDA B. GORTON, Cross-defendant and Respondent.

**COUNSEL**

Alvin M. Cassidy, Lascher & Lascher and Wendy C. Lascher for Cross-complainant and Appellant.

Jeffrey C. Metzger for Cross-defendant and Respondent.

**OPINION**

SCOVILLE, P. J.—The trial court sustained a demurrer to John Flynn's cross-complaint without leave to amend after determining that a prior judicial arbitration award against Flynn was res judicata.[1] Because we hold a

---

[1] The trial court did not enter a formal judgment of dismissal in this case. "However, in the interests of justice and to prevent unnecessary delay, we will deem the order sustaining the demurrer to incorporate a judgment of dismissal and will interpret appellant['s] notice of appeal as applying to the dismissal. [Citations.]" (*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 493, fn. 3 [220 Cal.Rptr. 818, 709 P.2d 837].)

judicial arbitration award has no conclusive effect on issues raised in a subsequent proceeding on a different cause of action, we reverse the judgment. As we shall explain, Flynn's action was not barred by res judicata because his cross-complaint stated a different cause of action than that involved in the judicial arbitration proceeding. Nor was Flynn barred under the doctrine of collateral estoppel from relitigating issues already resolved in the arbitration. Since we believe the monetary limits on judicial arbitration, along with the option of trial de novo, combine to dampen a defendant's incentive to litigate the issues, application of collateral estoppel to such a proceeding would be unfair and unexpected by the parties. More importantly, it could impair the efficiency and impede the purpose of the judicial arbitration system.

## FACTS

John Flynn and Achilda Gorton were involved in an automobile accident in 1983. Flynn was turning left and Gorton was entering the intersection when their cars collided. Kim Blackburn was a passenger in Gorton's car.

Gorton brought a personal injury suit against Flynn, alleging his negligence caused the collision. Flynn generally denied the allegation and claimed Gorton's negligence contributed to the accident.

Gorton elected to submit the case to arbitration and agreed that any award would not exceed $25,000. The arbitrator awarded her $20,281.08 in full settlement of her claims. The award became a final judgment which Flynn satisfied in full.

Blackburn then filed a personal injury complaint against Flynn and Gorton, alleging both were negligent. Flynn cross-complained against Gorton for implied indemnity, contribution and declaratory relief. He alleged Blackburn's injuries resulted from Gorton's negligence in causing the accident and he was entitled to a determination of each party's comparative negligence and an apportionment of damages.

Gorton demurred to Flynn's cross-complaint, arguing it was barred under the doctrine of res judicata because it presented the same claim decided in the judicial arbitration action. She asked the court to take judicial notice of the court files, the arbitrator's award, and his cover letter explaining the award. The award was silent as to the arbitrator's reasons for the decision. However, in the arbitrator's cover letter, he stated: "[O]nce I had completed the application of very basic accident reconstruction principals [*sic*] . . . , it became very clear that the issue of liability was no issue at all, and very clearly in favor of the plaintiff."

Flynn opposed the demurrer, arguing his cross-complaint for indemnity raised a new issue. The trial court sustained Gorton's demurrer without leave to amend.

On appeal Flynn argues the issue raised in his cross-complaint, i.e., whether Gorton was partially responsible for her passenger's injuries, was not addressed in the arbitration action. He contends the arbitration award did not resolve whether: (1) under comparative fault principles, Gorton was responsible in part for the collision and thus for Blackburn's injuries; and (2) whether Gorton otherwise contributed to her passenger's injuries, e.g., by failing to have seat belts or by somehow aggravating Blackburn's injuries after the collision. Flynn asserts the arbitration award and court file are silent on the issue of the parties' comparative fault in causing the collision, and it may be that the approximately $20,000 award to Gorton reflected an offset for her contributory negligence. He argues under these circumstances his action was not barred by res judicata.

<h2 style="text-align:center">DISCUSSION</h2>

■ The doctrine of res judicata is composed of two parts: claim preclusion and issue preclusion. Claim preclusion prohibits a party from relitigating a previously adjudicated cause of action; thus, a new lawsuit on the same cause of action is entirely barred. (*Frommhagen* v. *Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299-1300 [243 Cal.Rptr. 390].) Issue preclusion, or collateral estoppel, applies to a subsequent suit between the parties on a different cause of action. Collateral estoppel prevents the parties from relitigating any *issue* which was actually litigated and finally decided in the earlier action. (*Carroll* v. *Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 490 [143 Cal.Rptr. 772].) The issue decided in the earlier proceeding must be identical to the one presented in the subsequent action. If there is any doubt, collateral estoppel will not apply. (*Southwell* v. *Mallery, Stern & Warford* (1987) 194 Cal.App.3d 140, 144 [239 Cal.Rptr. 371].)

■ Res judicata and collateral estoppel share common goals. Both prevent inconsistent results and promote finality and judicial economy by bringing an end to litigation.

Judicial arbitration was enacted by the Legislature in 1978 to serve similar ends. Due to the cost, complexity and delay involved in court adjudication, the Legislature declared that arbitration should be encouraged or required as "an efficient and equitable method for resolving small claims." (Code Civ. Proc., § 1141.10, subd. (a).) Under the statute, court-ordered arbitration is mandatory in certain courts for civil actions in which the amount in controversy does not exceed a specified amount. (Code Civ. Proc., § 1141.11.) Such arbitration can also be elected by stipulation of the parties or by the unilateral decision of the plaintiff if he or she agrees that any award will not exceed the statutory amount. (Code Civ. Proc., § 1141.12.)

■ Unlike commercial or true arbitration, judicial arbitration is not binding, since any party dissatisfied with an award may elect trial de novo.[2] (Code Civ. Proc., § 1141.20.) The Legislature, however, seeking to encourage finality of judicial arbitration awards, enacted disincentives to trial de novo. (See *Demirgian* v. *Superior Court* (1986) 187 Cal.App.3d 372, 376 [231 Cal.Rptr. 698].) For example, if a party requesting trial de novo does not obtain a more favorable judgment, he or she is liable for significant costs and fees. (Code Civ. Proc., § 1141.21.)

Discouraging trial de novo is essential to the proper functioning of the judicial arbitration system. Along with its goal of resolving small claims efficiently and affordably, judicial arbitration is intended to ease court case loads. (Kanowitz, *Alternative Dispute Resolution and the Public Interest: The Arbitration Experience* (1987) 38 Hastings L.J. 239, 292.) The success of judicial arbitration in achieving these goals is dependent on a small incidence of trial de novo election. (*Id.,* at p. 293.)

If trial de novo is not requested within the statutory period, a judicial arbitration award becomes final and is not subject to appeal. (Code Civ. Proc., § 1141.23.) There is no question the Legislature intended the award, once final, to be a binding resolution of the particular cause of action. Code of Civil Procedure section 1141.23 provides that a final award shall have "the same force and effect as a judgment in any civil action or proceeding," except that it shall not be subject to appeal and generally may not be attacked or set aside. ■ Accordingly, a final judicial arbitration award, if clear and unambiguous, is res judicata in any subsequent proceeding on the same cause of action.

■ In the instant case, Flynn's indemnity action would have been barred if it had stated the same cause of action as Gorton's arbitrated negligence claim. The two proceedings, however, did not involve the same cause of action. Gorton's negligence claim involved her primary right to be free of personal injury, whereas this action concerns Flynn's right to equitable indemnity against third party damages. (See *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593]; *Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975 [104 Cal.Rptr. 42, 500 P.2d 1386].) Thus, Flynn's action was not barred under the cause preclusion aspect of res judicata.

■ Collateral estoppel is equally inapplicable here, but for different reasons. It would be unfair and unwise to give collateral estoppel effect to

---

[2] As was said by this court in *Dodd* v. *Ford* (1984) 153 Cal.App.3d 426, 432, footnote 7 [200 Cal.Rptr. 256], " 'Judicial Arbitration' is obviously an inapt term, for the system it describes is neither judicial nor arbitration. The hearing is not [necessarily] conducted by a judge, and the right to a trial de novo removes the finality of true arbitration. 'Extrajudicial mediation' would be closer to correct."

judicially arbitrated resolutions of issues. To begin with, as this case well illustrates, there are practical difficulties. No record is made of arbitration proceedings and generally no findings of fact or conclusions of law are required. (Cal. Rules of Court, rules 1614, 1615.) Thus, it is difficult to determine from the award alone what issues were actually litigated and how they were resolved.

Even if this difficulty could be surmounted, it is unfair to bind the parties to judicially arbitrated resolutions of issues. The doctrine of collateral estoppel is based on the premise that a thorough fact-finding process was completed in the first proceeding. (Shell, *Res Judicata and Collateral Estoppel Effects of Commercial Arbitration* (1988) 35 UCLA L.Rev. 623, 648.) However, in judicial arbitration, the low monetary amount in controversy and the option of trial de novo can leave parties without a serious incentive to litigate. Because the stakes involved are low, the parties may be willing to accept a compromise position without much of a fight. (See *Mahon* v. *Safeco Title Ins. Co.* (1988) 199 Cal.App.3d 616, 622 [245 Cal.Rptr. 103].)

Moreover, it is unlikely parties would expect a judicial arbitration award to have collateral estoppel effect in other proceedings where the stakes may be higher than they were in the arbitration proceeding. If they did, the result might be intensified litigation, delays and costs, as well as an increased rate of trial de novo election. Such a development would be directly contrary to the purposes underlying judicial arbitration legislation.

In summary, we hold that judicial arbitration awards should be accorded claim preclusion, but not issue preclusion, effect.

Accordingly, we reverse the trial court's judgment and remand this matter for further proceedings in light of the views expressed herein.

Crosby, J., and Wallin, J., concurred.