976 P.2d 904

Islebia DORRANCE, Plaintiff–Appellant,

v.

Kendrick LEE, Defendant–Appellee,

and

Doe Defendants 1–10, Defendants.

No. 21882.

Supreme Court of Hawai'i.

April 27, 1999.

David C. Schutter and Mitchell S. Wong (of David C. Schutter & Associates), on the briefs, Honolulu, for plaintiff-appellant.

Gary W.B. Chang (of Matsui Chung Sumida & Chang), Honolulu, for defendant-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by MOON, C.J.

Plaintiff-appellant Islebia Dorrance appeals from the circuit court order granting the motion for summary judgment brought by defendant-appellee Kendrick Lee. The central issue on appeal is whether the doctrine of collateral estoppel bars relitigation of an issue previously litigated and determined in a prior action. Here, the prior action was submitted to the Court Annexed Arbitration Program (CAAP),[1] resulting in the Arbitration Award being entered as a final judgment.

On appeal, Dorrance asserts that the circuit court erroneously granted summary judgment. For the reasons discussed *infra*, we affirm the circuit court's order granting Lee's motion for summary judgment.

## I. BACKGROUND

On April 9, 1996, Dorrance was driving her motor vehicle along Wai'alae Avenue, in Honolulu. Accompanying Dorrance was her mother, Usulina Cintron. As she was negotiating a left turn onto 6th Avenue, Lee's automobile struck Dorrance's automobile [hereinafter, the 1996 accident]. Both Dorrance and Cintron suffered various injuries as a result of the accident.

On March 18, 1997, Cintron filed a complaint against Dorrance and Lee, alleging that both were negligent in causing her injuries [hereinafter, the Cintron Action]. Both Dorrance and Lee filed answers to Cintron's

---

1. Hawai'i Revised Statutes (HRS) § 601-20 (1993) states in pertinent part:

 **Court annexed arbitration program.** (a) There is established within the judiciary a court annexed arbitration program which shall be a mandatory and nonbinding arbitration program to provide for a procedure to obtain prompt and equitable resolution of certain civil actions in tort through arbitration. The supreme court shall adopt rules for the implementation and administration of the program by January 1, 1987.

 (b) All civil actions in tort, having a probable jury award value, not reduced by the issue of liability, exclusive of interest and costs, of $150,000 or less, shall be submitted to the program and be subject to determination of arbitrability and to arbitration under the rules governing the program. The rules shall include a procedure to classify and establish the order of priority according to which the actions will be processed for the determination of arbitrability and for the arbitration under the program. The court may, at its discretion, remove any action from the program.

complaint, in which they denied all liability. Additionally, Dorrance and Lee filed cross-claims against each other, asserting the other's negligence and requesting contribution. The Cintron Action was submitted into the CAAP. On December 12, 1997, a hearing was held before an arbitrator, wherein Cintron, Dorrance, and Lee testified. Thereafter, Dorrance and Lee submitted written post-hearing argument on the issue of the other driver's negligence. On March 10, 1998, the arbitrator issued an "Arbitration Award," stating in pertinent part:

> 1. Liability—The Arbitrator determines that Comparative Negligence is in issue and finds as follows:

| | |
|---|---|
| % of Negligence of Plaintiff [Cintron] | 0% |
| % of Negligence of Defendant Dorrance | 70% |
| % of Negligence of Defendant Lee | 30% |
| Total | 100% |

The Arbitration Award was served on the parties on March 12, 1998. Thereafter, each party had twenty days to appeal the award and request a "trial *de novo*" in the circuit court. *See* Rule 21 of the Hawai'i Arbitration Rules (HAR) (1998), discussed *infra.* The Arbitration Award was not appealed, and, accordingly, the circuit court entered final judgment on the award on April 7, 1998.

Prior to the issuance of the Arbitration Award, Dorrance initiated the present case on February 17, 1998, alleging that Lee was negligent in the operation of his motor vehicle, thereby causing her injuries arising from the 1996 accident. On May 14, 1998, Lee filed a motion for summary judgment, arguing that, because the arbitrator in the Cintron Action had determined Dorrance's negligence to be larger than Lee's negligence, HRS § 663-31 (governing contributory negligence), *see infra*, barred Dorrance from bringing suit against him. On August 10, 1998, the circuit court entered an order granting Lee's motion for summary judgment, which stated, *inter alia*, that "Dorrance's claims [were] barred by the doctrine of res judicata and Section 663-31(a) and (c) of the Hawaii Revised Statutes." On the same day, the circuit court entered final judgment in favor of Lee and against Dorrance, and Dorrance timely appealed.

## II. STANDARDS OF REVIEW

Under the Hawai'i Rules of Civil Procedure (HRCP), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." HRCP Rule 56 (1993). The evidence should be viewed in the light most favorable to the non-moving party. *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995). On appeal, an order of summary judgment is reviewed de novo under the same standard. *Harris v. DeSoto*, 80 Hawai'i 425, 431, 911 P.2d 60, 66 (1996).

*Budget Rent–A–Car Systems, Inc. v. Ricardo*, 85 Hawai'i 243, 244, 942 P.2d 507, 508 (1997).

■ "The interpretation of a rule promulgated by the courts involves principles of statutory construction." *Cresencia v. Kim*, 85 Hawai'i 334, 335, 944 P.2d 1277, 1278 (1997) (citation omitted). Thus, like statutes, we interpret the Hawai'i Arbitration Rules *de novo.* *See Keliipuleole v. Wilson*, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) ("We interpret statutes *de novo.*" (Citation omitted.)). "Where the language of a statute is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." *Cresencia*, 85 Hawai'i at 335–36, 944 P.2d at 1277–78.

### III. DISCUSSION

A. *Judgment Based Upon An Arbitration Award Is A Final Judgment Which Can Have Collateral Estoppel Effect.*

On appeal, Dorrance essentially maintains that the circuit court improperly relied upon the Arbitration Award as a basis for applying collateral estoppel. Lee, on the other hand, asserts that Dorrance is collaterally estopped from relitigating the apportionment of liability as set forth in the Arbitration Award, which was subsequently reduced to a final judgment.

Before we consider whether collateral estoppel acts as a bar to relitigating the arbitrator's apportionment of liability, we first examine whether an arbitration award that has been reduced to judgment is a final judgment for purposes of collateral estoppel. We answer in the affirmative.

■ HAR Rule 21 states:

If, after twenty (20) days after the award is served upon the parties, no party has filed a written Notice of Appeal and Request for Trial *De Novo,* the clerk of the court shall, upon notification by the Arbitration Administrator, *enter the arbitration award* **as a final judgment** *of the court.* This period may be extended by written stipulation, filed within twenty (20) days after service of the award upon the parties, to a period no more than forty (40) days after the award is served upon the parties. *Said award* **shall have the same force and effect as a final judgment** *of the court in the civil action,* but may not be appealed.

(Emphases added). Thus, based on its plain and unambiguous terms, HAR Rule 21 clearly contemplates that after an arbitration award has matured into a final judgment—and is entered accordingly by a circuit court—that judgment is entitled to be treated in all respects as any other judgment. In the present case, the parties in the Cintron Action did not appeal Arbitration Award, and, accordingly, on April 7, 998, the circuit court entered final judgment on the award.

■ The California Court of Appeals has interpreted a statute virtually identical to HAR Rule 21 in the context of an arbitration program substantially similar to the CAAP. In *State Farm Mutual Automobile Insurance Co. v. Superior Court,* 211 Cal.App.3d 5, 259 Cal.Rptr. 50 (1989), the California Court of Appeals held that an arbitration award,

once final, is a judicial determination that can have collateral estoppel effect. The court reasoned:

In order to hold that a judgment entered upon an arbitration award did not judicially conclude those issues necessarily resolved by the arbitrator's decision, we would have to ignore the express language of Code of Civil Procedure section 1141.23.[2] Had State Farm desired that the award given to plaintiffs by the judicial arbitrator not ripen into a formal civil judgment, with all of its attendant consequences, it needed only to cause its insureds, to whom it was providing a defense, to make a timely request for a trial de novo (Code Civ. Proc., § 1141.20). This, State Farm did not do. *It should not now be heard, in the face of an express statutory declaration to the contrary, to argue that the resulting judgment is somehow entitled to less "force and effect" than the one which would have obtained had State Farm's insureds timely sought such relief and proceeded to trial before a jury.*

*State Farm,* 259 Cal.Rptr. at 53 (emphasis added). Based on the plain language of HAR Rule. 21 and the reasoning in *State Farm,* we hold that a judgment based upon an arbitration proceeding is a final judgment for collateral estoppel purposes. *Cf. Sartor v. Superior Court,* 136 Cal.App.3d 322, 187 Cal.Rptr. 247, 250 (1982) (holding that judgment confirming arbitration award constitutes final judgment on the merits for purposes of collateral estoppel); *Dale v. Guaranty Nat'l Ins. Co.,* 948 P.2d 545, 549 (Colo.1997) ("Collateral estoppel and res judicata have been applied to arbitration proceedings."); *Western Indus. and Envtl. Servs., Inc. v. Kaldveer Assoc., Inc.,* 126 Idaho 541, 887 P.2d 1048, 1051 (1994) (applying a statute, which provided that,

---

2. Section 1141.23 provides:

The arbitration award shall be in writing, signed by the arbitrator and filed in the court in which the action is pending. If there is no request for a de novo trial and the award is not vacated, the award shall be entered in the judgment book in the amount of the award. *Such award shall have the same force and effect as a judgment in any civil action or proceeding,* except that it is not subject to appeal and it

may not be attacked or set aside except as provided by Section 473 [(providing relief from a judgment due to mistake, surprise, etc.)], 1286.2 [(providing grounds for vacation of an arbitration award based on corruption, fraud, etc.)], or Judicial Council rule.

*State Farm,* 259 Cal.Rptr. at 51 (emphasis added). We note that neither sections 473 or 1286.2 nor any Judicial Council rule were implicated in *State Farm.*

"[u]pon the granting of an order confirming, modifying or correcting an [arbitration] award, judgment ... shall be entered in conformity therewith and be enforced as any other judgment or decree[,]" and holding that, based on a plain reading of the statute, once a judgment is entered by the court after an arbitration proceeding, it is given collateral estoppel effect); *Taylor v. Peoples Gas Light & Coke Co.,* 275 Ill. App.3d 655, 211 Ill.Dec. 942, 656 N.E.2d 134, 139 (1995) ("As a general rule, arbitration awards have the same *res judicata* and collateral estoppel effect as court judgments[.]"), *appeal denied,* 165 Ill.2d 566, 214 Ill.Dec. 866, 662 N.E.2d 432 (1996); *Bojrab v. John Carr Agency,* 597 N.E.2d 376, 378 (Ind.Ct.App.1992) (recognizing the general rule that a final judgment arising from an arbitration proceeding is given collateral estoppel effect); *Aufderhar v. Data Dispatch, Inc.,* 452 N.W.2d 648, 652 (Minn.1990) (holding that when personal injury damages were previously determined in an arbitration proceeding where the claimant has been afforded a full opportunity to litigate the issue, the claimant may be estopped from relitigating the issue in a later action against a different defendant).

The policy goals embodied in the CAAP support such a holding. This court, in *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 880 P.2d 169 (1994), stated:

In recent years, with the increase of civil litigation, escalating costs to the parties, and the strain on already scarce judicial resources, there is a dire need for prompt, equitable, and cost-efficient resolution of civil disputes before trial. A recent study entitled "Assessment of Civil Legal Needs of Low- and Moderate–Income People in Hawaii," prepared for the Hawai'i Commission on Access to Justice by The Spangenberg Group of West Newton, Massachusetts, has determined that there has been and is a serious level of unmet legal needs among such families in Hawai'i because they simply cannot afford market-rate legal services. It is well-established that, in most instances, the longer a case is in litigation, the more expensive it is for the parties. Thus, we have recognized time and again that the "proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation." *Leeward Bus Co. v. City & County of Honolulu,* 58 Haw. 64, 71, 564 P.2d 445, 449 (1977) (citation omitted). Further, courts have realized that, "[b]y expediting the adversary process, arbitration promotes quicker settlement of cases thereby speeding up access to the courts[.]" *Firelock Incorporated v. The District Court In and For the 20th Judicial District,* 776 P.2d 1090, 1099 (Colo.1989) (citations omitted).

*Id.* at 510, 880 P.2d at 185. Accordingly, by giving collateral estoppel effect to an arbitration award, this court would be reinforcing the CAAP policies of promoting judicial economy and finality.

Arguments to the contrary are not persuasive. For example, in *Flynn v. Gorton,* 207 Cal.App.3d 1550, 255 Cal.Rptr. 768, 770 (1989), the California Court of Appeals held that arbitration awards should *not* be accorded collateral estoppel effect. *Id.* at 772. The court reasoned, in pertinent part:

The doctrine of collateral estoppel is based on the premise that a thorough fact-finding process was completed in the first proceeding (Shell, *Res Judicata and Collateral Estoppel Effects of Commercial Arbitration* (1988) 35 UCLA L.Rev. 623, 648.) However, in judicial arbitration, the low monetary amount in controversy and the option of trial de novo can leave parties *without a serious incentive to litigate.* Because the stakes involved are low, the parties may be willing to accept a compromise position without much of a fight. (See *Mahon v. Safeco Title Ins. Co.* (1988) 199 Cal.App.3d 616, 622, 245 Cal.Rptr. 103.)

Moreover, it is *unlikely parties would expect a judicial arbitration award to have collateral estoppel effect* in other proceedings where the stakes may be higher than they were in the arbitration proceeding. *If they did, the result might be intensified litigation, delays and costs, as well as an increased rate of trial de novo election. Such a development would be direct-*

ly contrary to the purposes underlying judicial arbitration legislation.

*Id.* (emphasis added).

We reject the *Flynn* court's rationale. First, unlike the arbitration scheme in *Flynn*, the HAR impose a duty upon the parties "to participate in the arbitration hearing in a meaningful manner." HAR Rule 28 (1998) (authorizing sanctions for failure to meaningfully participate in arbitration hearing). Second, the consequences of a failure to seek a trial *de novo* are clearly set forth in HAR Rule 21. *See* HAR Rule 21 ("Said award shall have the same force and effect as a final judgment of the court in the civil action[.]"). Third, the HAR provide adequate disincentives to requesting trial *de novo* and thus ensures that the parties take arbitration proceedings seriously and defend their rights accordingly. *See* HAR Rule 26 (1998); *Richardson*, 76 Hawai'i at 511, 880 P.2d at 186 ("[T]he vital objectives of the CAAP cannot be met if participants invariably treat arbitration as a routine or *pro forma* step along the path to trial *de novo* by rejecting reasonable arbitration decisions[.]"). For example, if a party requesting trial *de novo* does not "prevail," he or she may be liable, in the trial court's discretion, for significant costs and fees. HAR Rule 26. Moreover, the California Court of Appeals in *State Farm* explicitly rejected the *Flynn* rationale. *See State Farm*, 259 Cal.Rptr. at 54. Accordingly, we hold that an arbitration award that has been reduced to a judgment is a final judgment for purposes of collateral estoppel. We now turn to the issue whether collateral estoppel bars Dorrance from relitigating the apportionment of liability as set forth in the Arbitration Award.

### B. *Dorrance Is Collaterally Estopped From Relitigating The Arbitrator's Apportionment Of Liability.*

This court has repeatedly noted that

[c]ollateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a *prior suit* on a different claim between the same parties or their privies.... Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a *prior suit* against one who was a party in that suit and who himself raised and litigated the fact or issue.

*Foytik v. Chandler*, 88 Hawai'i 307, 314–315, 966 P.2d 619, 626–627 (1998) (quoting *Morneau v. Stark Enters., Ltd.*, 56 Haw. 420, 423, 539 P.2d 472, 475 (1975)) (emphases added). This court has also treated collateral estoppel as an included doctrine of *res judicata* and applied the following elements of both doctrines interchangeably:

In *Morneau*, this court established a three-prong test to determine whether the doctrine of res judicata (*or collateral estoppel as an included doctrine*) bars relitigation of an issue. Res judicata will bar relitigation where (1) the issue decided in the prior adjudication is identical with the one presented in the action in question, (2) there was final judgment on the merits, and (3) the party against whom res judicata is asserted was a party or in privity with a party to the prior adjudication.

*Id.* at 315, 966 P.2d at 627 ( emphasis added); *see also Bush v. Watson*, 81 Hawai'i 474, 480, 918 P.2d 1130, 1136, *reconsideration denied*, 82 Hawai'i 156, 920 P.2d 370 (1996), *cert. denied*, 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997). Although this court has stated that the doctrine of *res judicata* involves two aspects—claim preclusion and issue preclusion — each aspect, in practice, involves distinct questions of law.

 Specifically, claim preclusion prohibits a party from relitigating a previously adjudicated cause of action. Issue preclusion, or collateral estoppel, on the other hand, applies to a subsequent suit between the parties or their privies on a *different* cause of action and prevents the parties or their privies from relitigating *any issue* that was actually litigated and finally decided in the earlier action. *See Flynn v. Gorton*, 207 Cal.App.3d 1550, 255 Cal.Rptr. 768, 770 (1989) (summarizing differences between doctrines of *res judicata* and collateral estoppel). Notwithstanding these differences, *res judicata* and collateral estoppel do share the common goals of preventing inconsistent results, preventing a multiplicity of suits, and

promoting finality and judicial economy. *Compare State v. Magoon*, 75 Haw. 164, 189, 858 P.2d 712, 724, *reconsideration denied*, 75 Haw. 580, 861 P.2d ·735 (1993) (explaining purposes of the doctrine of *res judicata* ) *with Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 294, 875 P.2d 894, 911 (1994) (noting that "[t]he purpose of the doctrine [of collateral estoppel] is to ... dispense with the delay and expense of two trials on the same issue (citation and internal quotation marks omitted)).

■ To recognize that *res judicata* and collateral estoppel share common goals is not to say that they should necessarily be analyzed in exactly the same fashion. When a party seeks to prevent another party from relitigating a particular issue of fact or law— as opposed to an entire cause of action—we believe it prudent to require not only that the particular issue be one that was "decided in the prior adjudication," *Bush*, 81 Hawai'i at 480, 918 P.2d at 1136, but also require that it be necessary or essential to the judgment in the prior proceeding.

Because determinations that are not essential to the judgment "have the characteristics of dicta[ ] and may not ordinarily be the subject of an appeal by the party against whom they were made[,]" we agree that the "interest in providing an opportunity for a considered determination ... outweighs the interest in avoiding the burden of relitigation." *Restatement (Second) of Judgments* § 27 cmt. h (1980); *see also United States v. Weems*, 49 F.3d 528, 534 (9th Cir. 1995) (Norris, J., concurring) (" 'The two rationales supporting the 'necessary to the judgment' rule are: (1) 'to ensure that the finder of fact in the first case took sufficient care in determining the issue,' *Pettaway v. Plummer*, 943 F.2d 1041, 1044 (9th Cir.1991), *cert. denied*, 506 U.S. 904, 113 S.Ct. 296, 121 L.Ed.2d 220 (1992); and (2) to protect against the fact that 'appellate review of a determination may not be available where the issue is not necessary to the determination of the final judgment,' *id.* n. 1.").

Therefore, in light of these countervailing considerations, we now explicitly add to our traditional three-pronged test—for collateral estoppel purposes only—the additional requirement that the particular issue of fact or law that was decided in the prior adjudication be essential to the earlier valid and final judgment. Although this court has not explicitly required this element in the past, we have noted with approval formulations of the collateral estoppel test that have included an "essential to the judgment" element. *See Sentinel Ins. Co.*, 76 Hawai'i at 294, 875 P.2d at 911 (citing with approval *Farmers Ins. Co. of Arizona v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703, 706 (1983), for the proposition that "[u]nder the doctrine of collateral estoppel, *the determination of a litigated fact or law which is essential to a valid and final judgment is conclusive between the parties* or their privies in a subsequent claim." (Emphasis in original.)).

■ We therefore hold that the doctrine of collateral estoppel bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication [hereinafter, the collateral estoppel test]. In the instant action, Dorrance concedes that prong four of the collateral estoppel test has been satisfied. Accordingly, this court is left to determine whether the remaining elements have been met.

■ With respect to the first element of the collateral estoppel test, it is clear that Dorrance, against whom collateral estoppel is asserted, seeks to relitigate an issue that was decided in the previous suit. The record illustrates that the issue decided in the prior adjudication is identical to the one presented in the action in question. As stated previously, the issue Dorrance attempts to litigate here, *i.e.*, whose negligence caused the 1996 accident and to what extent, was addressed and decided in the Cintron Action. In the present action, however, Dorrance argues that, insofar as she was a *defendant* in the Cintron Action but a *plaintiff* in the instant case, there is no identity of issues. This argument is meritless. As previously indi-

cated, collateral estoppel requires only that the *issue* decided in the prior adjudication be identical to the one presented in the present action; the position of a party, as either plaintiff or defendant, in the prior action is irrelevant. In the Cintron Action, the Arbitration Award explicitly apportioned liability as follows: Cintron 0%, Dorrance 70%, and Lee 30%. Thus, the issue of whose negligence caused the 1996 accident was decided in the prior adjudication.

■ Concerning the second element of the collateral estoppel test, i.e., that there be a final judgment *"on the merits,"* the record demonstrates that the final judgment was indeed "on the merits." In the Cintron Action, both Dorrance and Lee (1) filed answers to the Cintron complaint, in which they denied all liability; (2) filed cross-claims against each other for contribution; (3) appeared and testified at the arbitration hearing, again denying their own negligence; and (4) submitted written post-hearing briefs arguing the issue of the other driver's negligence. Where a party, such as Dorrance, had the opportunity to fully defend herself against claims of negligent driving—the same issue here—the final judgment from that proceeding was "on the merits." *See Tradewind Ins. Co., Ltd. v. Stout,* 85 Hawai'i 177, 185, 938 P.2d 1196, 1204 (App.)(considering the presentation of "extensive evidence" on the issue as "on the merits"), *cert. denied,* 85 Hawai'i 81, 937 P.2d 922 (1997). Accordingly, the second element of the collateral estoppel test has been satisfied.

■ Turning to the third element of the collateral estoppel test, it is obvious that the issue decided in the prior adjudication was essential to the final judgment. As previously noted, the Cintron Action involved a negligence claim by Cintron against Dorrance and Lee, alleging that both were negligent in causing her injuries. Accordingly, the issue of whose negligence caused the 1996 accident

and to what extent was essential to the earlier judgment, inasmuch as it established liability for Cintron's injuries.

Dorrance cites to dictum from *Darcy v. Lolohea,* 77 Hawai'i 422, 428, 886 P.2d 759, 765 (App.), *cert. denied,* 77 Hawai'i 489, 889 P.2d 66 (1994), for the proposition that "nothing in the HAR permits the introduction of an arbitration award in evidence as the grounds for any dispositive motion filed in circuit court." Dorrance argues that the circuit court was therefore prohibited from considering the Arbitration Award in the Cintron Action as a basis for entering summary judgment in favor of Lee in the instant case. The *Darcy* dictum, however, dealt strictly with the filing of a dispositive motion with the circuit court *in the same case* before the arbitration award became final. *See id.* at 428, 886 P.2d at 765. *Darcy* thus cannot be read to prohibit a court *in another case* from using the CAAP award as substantive evidence once the award has matured into a final judgment, and Dorrance's reliance upon *Darcy* is misplaced.

■ Inasmuch as the four prongs of the collateral estoppel test have been satisfied, we hold that collateral estoppel precludes the relitigation of the issue, *i.e.,* whether and to what extent Lee's and/or Dorrance's negligence caused the 1996 accident in the present case.

## IV. CONCLUSION

Because the Arbitration Award apportioned the liabilities in the Cintron Action as Dorrance 70% negligent and Lee 30% negligent and, given our holding that the Arbitration Award has collateral estoppel effect, HRS § 663–31(a) (1993)[3] bars any recovery by Dorrance herein. Accordingly, we con-

---

3. HRS § 663–31(a) provides in relevant part:
 (a) *Contributory negligence shall not bar recovery* in any action by any person or the person's legal representative *to recover damages for negligence* resulting in death or in injury to person or property, *if such negligence was not greater than the negligence of the person* or in the case of more than one person, the aggregate negligence of such persons *against whom recovery is sought,* but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.
 (Emphases added.)

clude that the circuit court properly granted summary judgment in favor of Lee and against Dorrance. Consequently, we affirm the circuit court's final judgment in favor of Lee and against Dorrance.