38 P.3d 581

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Richard Louis ADAM, Defendant–Appellant.**

**No. 23451.**

Intermediate Court of Appeals of Hawai'i.

Nov. 26, 2001.

Certiorari Granted Dec. 12, 2001.

Certiorari Dismissed as Improvidently Granted Jan. 28, 2002.

Thomas Arthur Hensley, Chief Judge, and Alfred P. Lerma, Kealakekua, for Defendant–Appellant.

Dale Yamada Ross, Deputy Prosecuting Attorney, County of Hawaiʻi, for Plaintiff Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Richard Louis Adam (Adam) appeals from the April 27, 2000 Judgment entered in the Third Circuit Court,[1] upon a jury's verdict, convicting him

---

1. Circuit Court Judge Ronald Ibarra presided in this case.

of (1) Assault in the Second Degree, Hawaii Revised Statutes (HRS) § 707–711(1)(d) (1993), and (2) Terroristic Threatening in the First Degree, HRS §§ 707–715(1) and 707–716(1)(d) (1993).

Specifically, Adam challenges (1) the February 22, 2000 oral order denying Defendant's Motion in Limine I Re: Evidence of Bias, Interest or Motive of Purported Victim, filed on February 17, 2000, and Defendant's Motion in Limine II Re: Propensity for Violence or Aggression of Victim, filed February 17, 2000; (2) the February 28, 2000 oral order denying Motion in Limine III, filed February 23, 2000; and (3) the April 19, 2000 "Order Denying Defendant's Motion for Judgment Notwithstanding Verdict and Motion for New Trial." We affirm.

## BACKGROUND

John Wentworth (Wentworth) testified that he had picked ʻopihi [2] all his life and had picked ʻopihi from the Miloliʻi coastline on numerous occasions in the past. On July 1, 1998, Wentworth decided to pick ʻopihi for the birthday party of the daughter of his girl friend, Denise Santos (Santos). Shortly before noon, Santos drove Wentworth and his cousin, Jason Aki (Aki), to the Miloliʻi area. Santos parked the truck and Wentworth and Aki then climbed down a rocky cliff to get to the ocean and the ʻopihi.

Subsequently, Wentworth climbed back "up a little bit off the shoreline" and while he was "facing toward the land" and "taking a leak" and looking at "a leho [3] shell on the rock" he felt "one big sharp pain on my back, like something went hit me." He then "turned up" and saw Adam "about 20 to 50 feet up" holding a baby in his left hand and a softball-size rock in his right hand and smiling. After Wentworth asked Adam, "What you doing?" Adam threw the second rock "straight direct in front of [Wentworth's]

head." Wentworth caught the rock, lost his balance, and fell in the water. Wentworth "got real angry," swam out of the water, climbed the cliff, "went forwards to [Adam's] house where the fence was" and "started calling [Adam] out." Wentworth then took the following actions: "[s]wear, yell, and fly rocks at [Adam], at [Adam's] truck." When one of the rocks hit the back fender of Adam's truck on the driver's side, Adam ran out with a nine millimeter pistol in one hand and the baby in the other. Adam "put [the baby] down on the ground[,]" pointed the gun in Wentworth's direction, and discharged the weapon after it misfired maybe three or four times. Wentworth then turned around, warned his friends, and ran towards his truck. Wentworth sustained injuries to his back from the first rock, a gash on his hand from the second rock, and miscellaneous injuries from running on the aā [4] lava. Both Adam and Santos called 911 and reported the incident.

In his testimony, Adam denied going to the edge of the cliff or throwing rocks over the cliff. He stated that he witnessed his dogs go over the cliff, heard yelling from below the cliff, and saw his dogs [5] running back up followed by baseball-sized rocks from below. A few minutes later, he heard Wentworth yelling, "I'm gonna fucking kill you. I'm gonna fucking kill you," and saw Wentworth with one foot on the fence and "his left hand gripping the top railing" and throwing rocks toward his house. The distance between "the steps where [Adam] took that shot to the fence where Mr. Wentworth was standing" was "75 to 80 feet." The distance "from the truck that Mr. Wentworth hit with the rock and the fence where he was standing" was "35 feet—30, 35 feet, maybe even a little more." Seeking to motivate Wentworth to leave, Adam grabbed a gun, loaded a clip into the weapon, pulled the slide back, chambered a round, and fired a bullet out to sea over

2. " ʻOpihi" is the Hawaiian term for "limpets." M. Pukui & S. Elbert, Hawaiian Dictionary 292 (rev. ed.1986).

3. "Leho" is the general Hawaiian term for "cowry shell." M. Pukui & S. Elbert, Hawaiian Dictionary 199 (rev. ed.1986).

4. "Aā" is the Hawaiian term for "stony." M. Pukui & S. Elbert, Hawaiian Dictionary 2 (rev. ed.1986).

5. John Wentworth testified that Defendant Appellant Richard Louis Adam (Adam) had "[a]bout three" "German shepherds." Adam testified that he had four.

Wentworth's head. As Wentworth ran away, Adam went into the house, called 911, and waited for the police to arrive.

The police arrested Adam. On July 14, 1998, Plaintiff Appellee State of Hawai'i (the State) charged Adam with Count I, Assault in the Second Degree, HRS § 707–711(1)(d) (1993), Count II, Terroristic Threatening in the First Degree, HRS §§ 707–715(1) and 707–716(1)(d) (1993), Count III, Reckless Endangering in the Second Degree, HRS § 707–714(1) (1993), and Count IV, Promoting a Detrimental Drug in the Second Degree, HRS § 712–1248(1)(c) (1993).

On May 3, 1999, the court entered its Order Granting [Adam's] Motion to Sever Trial of Counts I Through III From Trial of Count IV.

At the March 1, 2000 hearing, the court concluded that the gun was not discharged in the direction of any residences and granted Adam's Motion for Judgment Notwithstanding the Verdict as to Count III.

Count I charged that Adam "intentionally or knowingly caused bodily injury to another, John Wentworth, with a dangerous instrument, a rock, thereby committing the offense of Assault in the Second Degree." Adam's primary defense was that it did not happen.

Count II charged that "Adam, with the intent to terrorize or in reckless disregard of the risk of terrorizing another person, did threaten by word or conduct with the use of a dangerous instrument, a gun, to cause bodily injury to another and/or to commit a felony, thereby committing the offense of Terroristic Threatening in the First Degree." Adam's defense was justification.

On March 6, 2000, the jury found Adam guilty of Counts I and II. The court sentenced Adam to probation for five years upon the condition that he be incarcerated for one year for Count I, and 240 days for Count II. The court further ordered that "[y]ou shall serve not less than 73 days per year and shall provide a schedule to your probation officer before returning to New Hampshire. If you do not serve 73 days per year, you shall serve straight time."

DISCUSSION

A.

Motion in Limine II

In Defendant's February 17, 2000 Motion in Limine II Re: Propensity for Violence or Aggression of Victim, filed on February 17, 2000, Adam sought permission to present "evidence of the propensity for violence and aggressiveness of the purported victim in this case, pursuant to H.R.E. Rule 404" to prove "that the alleged victim was the aggressor in the confrontation that gave rise to this indictment[.]" We affirm the trial court's denial of this motion.

The circuit court did not allow Adam to introduce the following evidence of Wentworth's criminal history:

1. Charge for abuse of a family or household member on November 22, 1999.

2. Conviction for abuse of a family or household member on November 9, 1999.

3. Conviction for abuse of a family or household member on March 1, 1995.

4. Conviction for abuse of a family or household member on February 10, 1994.

5. Conviction for Harassment on September 10, 1994.

6. Arrest for criminal property damage on March 18, 1988.

7. Multiple convictions for driving under the influence of intoxicating liquor.

Adam advised the court

that he intended to rely upon the defense that he used force in self-protection, H.R.S. § 703–304; that he used force for the protection of his small daughter, H.R.S. § 703–305; and that he used force for the protection of his property, H.R.S. § 703–306. In furtherance of those defenses, in addition to the anticipated testimony of [Adam], [Adam] offered evidence of prior acts of violence and aggressiveness on the part of John Wentworth, the alleged victim in this case, and evidence of drunk

driving convictions (to show his disregard for the safety of others).

(Record citation omitted.)

Although Rule 404, Hawai'i Rules of Evidence (HRE), generally prohibits evidence of a person's character or a trait of a person's character for the purpose of proving action in conformity therewith on a particular occasion, HRE Rule 404(a)(2) allows "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused[.]" However, HRE Rule 404(b) limits the use of evidence of other crimes, wrongs, or acts as follows:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

In *State v. Lui*, 61 Haw. 328, 603 P.2d 151 (1979), which was decided prior to the adoption of the Hawai'i Rules of Evidence in 1980, Lui argued that "he was denied his right to present evidence when the court refused to admit character evidence on specific acts of prior violence committed by deceased." *Id.* at 329, 603 P.2d at 154. The Hawai'i Supreme Court held that the trial court did not abuse its discretion in excluding the evidence because the facts were clear that the defendant, and not the victim, had been the aggressor. In other words, evidence of the victim's record of criminal violence was not pertinent to any dispute of material fact in the case.

In *State v. Basque*, 66 Haw. 510, 666 P.2d 599 (1983), the Hawai'i Supreme Court reversed the trial court's denial of Basque's request to introduce a homicide victim's record of criminal violence. There was a struggle between Basque and the victim for Basque's gun and the evidence presented was unclear and conflicting as to who was the aggressor. The State's version was that Basque shot the gun and wounded the victim and then, in a struggle for the gun, another shot killed the victim. Basque's version was that Basque and the victim grabbed for the gun at the same time and, during the struggle, both shots were fired. In other words, evidence of the victim's record of criminal violence was pertinent to the question of whether Basque was trying to prevent the victim from using the gun to harm Basque.

Notwithstanding the prohibition of HRE Rule 404(b), in *Basque*, the Hawai'i Supreme Court stated, in relevant part, as follows:

> In *Lui*, however, we treated general character evidence and specific prior acts (including those reflected in the victim's criminal record) the same for purposes of corroborating a defendant's self-defense claim as to who was the aggressor. A growing number of other courts are in accord. As Dean Wigmore has stated: [T]here is no substantial reason against evidencing the character (of a deceased victim) by *particular instances of* violent or quarrelsome *conduct*. Such instances may be very significant; their number can be controlled by the trial court's discretion; and the prohibitory considerations applicable to an accused's character have here little or no force.

*Basque*, 66 Haw. at 514, 666 P.2d at 602 (citations and internal quotation marks omitted; brackets and emphasis in the original).

In *State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987), Estrada was charged with the attempted murder of Police Officer Taguma and asserted the defense of self-defense. The Hawai'i Supreme Court concluded that the witness, a bar hostess, should have been allowed to testify "that Officer Taguma, while a Maui County liquor control inspector, had sexually harassed her, grabbed her breasts, and threatened to use his official powers to

have her fired unless she had sexual relations with him." *Id.* at 211–12, 738 P.2d at 819.

Adam argues that

the jury had a right to know that Wentworth was violent enough and aggressive enough to come to [Adam's] home to cause trouble, to blame his self-inflicted injury on [Adam], or [Adam's] dogs, and then to seek revenge against [Adam].

Stated differently, the Trial Court's ruling against the proffer was erroneous because it assumed that the question of the first aggressor only applied to the incident that occurred at the fence. It is abundantly clear, with Wentworth's admissions, that he was indeed the first aggressor at that stage. However, the analysis does not stop there. The Court's ruling forever prejudiced [Adam] from having a fair trial, when it failed to take into account that the issue of the first aggressor did not merely apply to the incident at the fence, but went back in time to the incident at the cliff.

The issue at the cliff was whether or not [Adam] threw the rock. If [Adam] threw the rock, unprovoked, then as to the *entire* incident he could be labeled as the first aggressor. If [Adam] did not throw the rock, as [Adam] professes, then who was the first aggressor as to the entire incident? In the minds of the jury, this surely must have been a question, and based on their decision, they must have decided that the [sic] was the first aggressor of the entire incident, and they did so without knowledge of Wentworth's nature.

(Emphasis in original.)

■ We conclude that HRE Rule 404 prohibits evidence "that Wentworth was violent enough and aggressive enough to come to [Adam's] home to cause trouble, to blame his self-inflicted injury on [Adam], or [Adam's] dogs, and then to seek revenge against [Adam]."

■ It has been said that when the factual issue is who is the aggressor, the defendant may introduce evidence of the other person's violent or aggressive character. *Lui,* 61 Haw. at 330–31, 603 P.2d at 154. This statement is misleading. More correctly, when the factual issue is, as between the

defendant and the other person, who was the aggressor, the defendant may introduce evidence of the other person's violent or aggressive character. In other words, there must be evidence to support a finding that the defendant was the aggressor and there must be contrary evidence to support a finding that the other person was the aggressor. In the situation where there is evidence to support a finding that the defendant was the aggressor and there is no evidence to support a finding that the other person was the aggressor, the defendant may not introduce evidence of the other person's violent or aggressive character. *Id.* Thus, with respect to Count I, evidence of Wentworth's violent or aggressive character was not admissible.

■ With respect to Count II, there was no factual issue as to who, Wentworth or Adam, was the first aggressor. Wentworth admitted he was the aggressor and Adam responded by firing his gun. The question was whether the State proved beyond a reasonable doubt that the force used by Adam was not justifiable. The jury was instructed that "[t]he use of force upon or toward another person is justified when a person reasonably believes that such force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person."

Adam's knowledge of Wentworth's violent or aggressive character was admissible to the extent that it supported his belief that the force he used was immediately necessary to protect himself on that occasion against Wentworth's use of unlawful force. However, there is no evidence that Adam was aware of Wentworth's criminal history. Clearly, any of Wentworth's criminal history that was unknown to Adam when Adam fired the shot was irrelevant.

Quoting *Lui, supra,* Adam contends that his knowledge of Wentworth's criminal history was not required because such "foundation is not required where the factual issue is to determine the aggressor." As we have concluded above, however, such foundation is not required when the factual issue is, as between the defendant and the other person,

who was the aggressor, and no such factual issue was presented in this case.

## B.

### Motion in Limine III

In his February 23, 2000 Motion in Limine III, Adam sought

to preclude the State from objecting to or attempting to rebut evidence sought to be presented by [Adam], to the effect that his conduct on July 1, 1998, was in response to serial harassment by a group of people associated with Milolii Village, and which included Jason Aki, who was at the scene on July 1, 1998. The basis for the motion is that [Adam] was earlier charged ... with having illegally blocked the roadway in front of his house. In that case, the defense was justification, based upon Mr. Adam's wish to protect himself, his family and his home from this group. After trial, on Feb. 24 and Mar. 21, 1997, he was acquitted.

Where the identical issue was there litigated between the same two parties, it is respectfully suggested that the State should be prevented from resisting [Adam's] use of the same facts on grounds of issue preclusion.

In his Memorandum in Support of Motion in Limine III, Adam argued:

This matter was litigated in the District Court, and, in defense of a ·charge of illegally blocking a road, Mr. Adam presented evidence (including the videotape offered in this trial) that he had been harassed routinely and consistently by this group of people. The Trial Court ... having heard the testimony and having viewed the videotape, specifically found that [Adam's] conduct was the lesser of two evils; and that it was justified.

[Adam's] position here is that this prior adjudication between the same parties has a preclusive effect as to the issue of [Adam] having been harassed by this group. That is not to say that [Adam] argues that the prior trial result precludes the State from arguing that excessive force was used by Mr. Adam in the instant case; rather [Adam] argues that this ongoing

harassment is one of the global facts that were subsumed in his state of mind at the time of this incident, upon which he could rely in reasonably believing himself (and his child) to be faced with imminent deadly force (as threatened by John Wentworth, the alleged victim).

At the February 28, 2000 hearing on the Motion in Limine III, counsel for Adam stated:

I am simply asking that your Honor foreclose the State from attacking our defense to the extent that the State might try to show that there was no prior serial harassment of Mr. Adam. Now, this is an important point for the defense, because obviously the justification defense requires that the defendant be in possession of facts at the time of his own conduct that would justify a reasonable person in exerting force against the persons that he considers to be intruders.

■ Issue preclusion, or the doctrine of collateral estoppel, applies in a subsequent suit between the same parties or their privies on a different cause of action and prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action. *Dorrance v. Lee*, 90 Hawai'i 143, 148, 976 P.2d 904, 909 (1999).

Adam argued the evidence would have provided the jury with his state of mind when he discharged the weapon. Adam contended that he reasonably believed that he and his child were in imminent danger of deadly force when Wentworth threatened him and threw rocks at his property. In support of his motion, Adam cited *Dorrance*, which applied the following four-part test to determine if collateral estoppel bars relitigation of an issue.

1. Precisely identify the issue sought to be precluded in the second action. Is it identical to the issue in the first action?

2. Was this precise issue actually litigated and decided by the fact finder in the first action?

3. Considering all of the objections, motions, and rulings which related to this issue,

was it finally judicially determined in the first action?

4. Was the judgment in the first action dependent on the determination of this issue?

■ We agree with the circuit court that Adam failed to satisfy the part 1 of the *Dorrance* test. As discussed earlier, the prior case between the State and Adam involved an incident where Adam blockaded a roadway directly in front of his house in response to serial harassment from a group of people that included Wentworth's cousin, Aki, but did not include Wentworth. The court decided that the parking of Adam's truck on the roadway was a lesser evil than the harm caused by the group to Adam and was justified.

In contrast, the primary question presented by Count II was whether the State proved beyond a reasonable doubt that the gunshot by Adam was not justifiable. The jury was instructed that "[t]he use of force upon or toward another person is justified when a person reasonably believes that such force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person." The fact that the parking of Adam's truck on the roadway was justified as a lesser evil than the harm caused to Adam by the group's serial harassment is not evidence that Adam reasonably believed that he and his child were in imminent danger of deadly force when Wentworth threatened him and threw rocks at his property. Therefore, Adam's collateral estoppel argument fails part 1 of the *Dorrance* test.

Alternatively, we note that all Adam wanted was "that your Honor foreclose the State from attacking our defense to the extent that the State might try to show that there was

no prior serial harassment of Mr. Adam." Adam did not point out where in the record the State tried to make such a showing and we were unable to locate it. Unless the State tried to make such a showing, the alleged error is harmless error.

C.

Motion in Limine I

■ In his Motion in Limine I, Adam sought to introduce page three of Wentworth's application to the Criminal Injuries Compensation Commission, HRS Chapter 351 (Supp.2000). On this page, Wentworth wrote that he was "not sure" whether he would be filing a civil claim against Adam. Adam argued in his Motion in Limine I that this evidence was admissible pursuant to HRE § 609.1(a) (1993) [6] because the fact that Adam's conviction could be used as evidence in a civil law suit established Wentworth's financial motive and bias in testifying against Adam.

In considering this motion, the court questioned whether Wentworth knew that Adam's conviction could be used as evidence in his civil lawsuit against Adam. The court was advised that "those applications are automatically given to victims or alleged victims" and that Wentworth was functionally illiterate. In denying the motion, the court applied HRE § 403 (1993) [7] and stated:

So where are we going? I'm trying to keep the issue on track, rather than waste everybody's time, going out and bringing the Criminal Injuries Compensation [Commission]; or the victim[']s counselor coming in to testify as to what the prosecutor's procedure is when there is a complainant (*sic*), that the victim[']s counselor would go

---

6. Hawaii Rules of Evidence (HRE), Rule 609.1 (1993), states as follows:

**Evidence of bias, interest, or motive.** (a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.

(b) Extrinsic evidence of bias, interest, or motive. Extrinsic evidence of a witness' bias, interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is

afforded an opportunity to explain or deny the matter.

7. HRE Rule 403 (1993) states as follows:
**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

and talk to these alleged victims to have them fill out these applications.

However, prior to considering the motion, the court stated that "[a]t the outset, the Court would note that any of the Court's rulings on these motion[s] in limine may be reconsidered, should counsel believe that there is other evidence that the Court should consider, other circumstances."

 As a witness for the State, Wentworth testified that he was not able to read. Although "[t]he credibility of a prosecuting witness in a criminal case is always relevant, and cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness is a proper and important function of the constitutionally protected right of cross-examination[,]" *State v. Liuafi*, 1 Haw.App. 625, 630, 623 P.2d 1271, 1275 (1981) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)), Wentworth was not cross-examined regarding his possible interest in a civil lawsuit. Adam's right to introduce page three of the application depended on Wentworth's answer to one or more relevant questions which Wentworth was never asked. Therefore, we affirm the circuit court's ruling.

### D.

#### Motion for Judgment of Acquittal and

#### Motion for a New Trial

On March 14, 2000, Adam filed a motion for a new trial, and on March 16, 2000, he filed a motion for judgment of acquittal. In these motions, Adam stated the court should reconsider four points: (1) the collateral estoppel issue raised in his Motion in Limine III; (2) the issue raised in his Motion in Limine II; (3) the issue raised in his Motion in Limine I; and (4) the sufficiency of the evidence. Stating it would not revisit these issues, the court denied the motion as to points (1), (2), and (3). Stating "that a reasonable jury could conclude the defendant guilty based on the evidence presented in court[,]" the court denied the motion as to point (4).

 "The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review." *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (internal brackets omitted). The test on appeal is not whether guilt was established beyond a reasonable doubt, but whether substantial evidence existed to support the jury's decision. *State v. Jackson*, 81 Hawai'i 39, 46, 912 P.2d 71, 78 (1996). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *State v. Batson*, 73 Haw. 236, 248–49, 831 P.2d 924, 931, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted). Under such a review, we give "full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *State v. Yabusaki*, 58 Haw. 404, 411, 570 P.2d 844, 848 (1977) (citations omitted).

 "Both the grant and the denial of a motion for new trial is within the trial court's discretion, and we will not reverse that decision absent a clear abuse of discretion." *Kawamata Farms v. United Agri Products*, 86 Hawai'i 214, 251, 948 P.2d 1055, 1092 (1997) (quoting *State v. United States Steel Corp.*, 82 Hawai'i 32, 54, 919 P.2d 294, 316 (1996) (citations and internal quotation marks omitted)). "A ... court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." *Abastillas v. Kekona*, 87 Hawai'i 446, 449, 958 P.2d 1136, 1139 (1998) (quoting *Kawamata Farms*, 86 Hawai'i at 241, 948 P.2d at 1082 (citation omitted)).

Adam argues that his motion for a new trial and his motion for judgment of acquittal should have been granted because the circuit court erred in its rulings and the evidence was insufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

In his motion for judgment of acquittal, Adam argued that the State's evidence was not credible and therefore failed to support the guilty verdicts of the jury. Specifically, he argued that the lava rock picked up by Aki, which allegedly struck Wentworth's back, failed to have any physical evidence of striking a human. The rock was bereft of any human fibers or blood despite the large abrasion on Wentworth's back. Adam further added that the appearance of the ʻopihi bag went against Wentworth's contention that he lost his balance and fell into the water after blocking the second rock. If the ʻopihi bag had been submerged into the salt water, then the bag would have laid flat after drying in the sun. However, he stated the bag in the photographs appeared to be fluffy when, if following Wentworth's facts, the bag should have been flat. Furthermore, Adam had an expert introduce the possibility that the abrasions on Wentworth's back started in an upward direction instead of downward as a thrown rock would have left.

Viewing the evidence in the light most favorable to the prosecution, and in full recognition of the province of the trier of fact, we conclude that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Therefore, we affirm the denial of the motion for judgment of acquittal.

In his motion for a new trial, Adam argued that the court erroneously denied his three motions in limine which, if granted, would have provided enough evidence to acquit him or justify his actions. Furthermore, he again argued sufficient evidence did not exist to convict him. Upon a review of the record, we reaffirm our decision above.

## CONCLUSION

Accordingly, we affirm the circuit court's April 27, 2000 Judgment convicting Defendant–Appellant Richard Louis Adam of (1) Assault in the Second Degree, HRS § 707–711(1)(d), and (2) Terroristic Threatening in the First Degree, HRS §§ 707–715(1) and 707–716(1)(d) (1993).