**Electronically Filed
Supreme Court
SCWC-15-0000655
07-SEP-2018
08:22 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

————————————————————————————————————

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

PHILLIP DEJESUS DELEON,
Petitioner/Defendant-Appellant.

————————————————————————————————————

SCWC-15-0000655

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000655; CR. NO. 09-1-1237)

SEPTEMBER 7, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

Defendant Phillip DeLeon was charged with, inter alia, Murder in the Second Degree of Shawn Powell. The charges stemmed from a late-night confrontation between DeLeon and a group of men that included Powell and Jermaine Beaudoin, which resulted in DeLeon fatally shooting Powell in the chest. In support of

DeLeon's claim of self-defense, DeLeon sought to introduce evidence of Powell's and Beaudoin's prior violent acts under Hawaiʻi Rules of Evidence (HRE) Rules 404 and 405, to show their violent or aggressive character. Hawaiʻi law permits defendants to introduce evidence of victims' prior violent acts for that purpose, but only if there is a factual dispute as to whether the defendant or the victim was the first aggressor. See State v. Lui, 61 Haw. 328, 329, 603 P.2d 151, 154 (1979). The circuit court denied DeLeon's request after finding that there was no factual dispute that DeLeon was the first aggressor, and DeLeon was convicted of Powell's murder. The Intermediate Court of Appeals (ICA) affirmed, and DeLeon now seeks certiorari review.

As an initial matter, we hold that a victim's violent or aggressive character is an "essential element" of a self-defense claim for purposes of determining admissibility under HRE Rule 405. Accordingly, specific instances of conduct, such as a victim's prior violent acts, can be used as a method of proving character in such circumstances under HRE Rule 405.

We further hold that the circuit court erred in finding no factual dispute as to who was the first aggressor. We also conclude that the error was not harmless. Accordingly, we vacate the ICA's December 13, 2017 Judgment on Appeal and the circuit court's August 5, 2015 Judgment, and remand the case for further proceedings.

2

## I.  Background

### A.  Prior Proceedings

On August 5, 2009, the State indicted DeLeon for eight charges, including: Attempted Murder in the First Degree (Count I), in violation of Hawaiʻi Revised Statutes (HRS) §§ 705-500, 707-701(1)(a), and 706-656; Murder in the Second Degree (Count II), in violation of HRS §§ 707-701.5 and 706-656; Attempted Murder in the Second Degree (Count III), in violation of HRS §§ 705-500, 707-701.5, and 706-656; Carrying or Use of Firearm in the Commission of a Separate Felony (Counts IV and V), in violation of HRS §§ 134-21, 705-500, 707-701.5, and 706-656; Place to Keep Pistol or Revolver (Count VI), in violation of HRS § 134-25; Reckless Endangering in the First Degree (Count VII), in violation of HRS § 707-713; and Ownership or Possession Prohibited of Any Firearm or Ammunition By a Person Indicted for Certain Crimes (Count VIII), in violation of HRS §§ 134-7(b) and (h).  The Grand Jury identified the following people as victims: Shawn Powell in Counts I and II, Justin Gamboa in Counts I and III, Jermaine Beaudoin in Count VII, and Lane Akiona in Count VII.

On October 1, 2010, a jury found DeLeon not guilty of Count I, guilty of Count III's lesser-included offense of Reckless Endangering in the First Degree, and guilty as charged of all other counts.  On appeal, the ICA vacated the Count V conviction and affirmed the remaining convictions.  On certiorari

3

review, this court vacated the circuit court's judgment of conviction and sentence on Counts II and IV only,[1] and remanded the case to the circuit court for further proceedings on those counts. State v. DeLeon, 131 Hawaiʻi 463, 486, 489, 319 P.3d 382, 405, 408 (2014). Accordingly, Counts II and IV are the only charges at issue in this appeal.[2]

B.    Instant Circuit Court Proceedings

Prior to his re-trial, DeLeon filed an "Amended Notice of Intent to Rely on Hawaiʻi Rules of Evidence, Rule 404(b) Evidence," which sought to introduce evidence of Powell's and Beaudoin's prior bad acts to support DeLeon's position that Powell and Beaudoin were the first aggressors.  DeLeon specifically sought to introduce evidence that Powell had struck prosecution witness Joseph Chang "while Chang was attempting to physically separate [Powell] and a Reynold Borges" in 2007, and also that Powell was convicted of two counts of Assault in the Third Degree on June 13, 2000.  The motion also sought to introduce Powell's January 31, 1994 Disorderly Conduct and November 15, 1995 Criminal Property Damage convictions.  DeLeon sought to introduce evidence that Beaudoin was convicted of Assault in the Third Degree on October 29, 1998, Assault in the Second Degree on August 8, 2000, and was arrested for two counts

---

[1]    Thus, DeLeon was found guilty, inter alia, of Reckless Endangering in the First Degree (Count VII) of Beaudoin and/or Akiona.

[2]    Count II is Murder in the Second Degree of Powell.  Count IV is the accompanying Carrying or Use of Firearm in the Commission of a Separate Felony.

of Assault in the Third Degree on January 12, 2003.

Trial commenced on April 7, 2015.[3]

1.   **Essential Testimony from the State's Case-in-Chief**

a.   **Beaudoin's Testimony**

Beaudoin testified that on July 31, 2009, after a night of drinking at various bars, he, Powell, and Justin Gamboa arrived at Bar Seven at around 2:00 a.m.  Later in the night at Bar Seven, Beaudoin saw Powell and DeLeon "having a confrontation."  Beaudoin described Powell and DeLeon as "holding each other behind the head, and with their heads stuck to each other, arguing."  Beaudoin testified that he then walked over to Powell and DeLeon to stop them, saying "stop it, relax, cool down."  Beaudoin testified that DeLeon swore at him, at which point Beaudoin slapped DeLeon.  Beaudoin further testified that the bouncers came in at that point and escorted DeLeon out of the bar.

Beaudoin testified that he, Powell, and Gamboa stayed at Bar Seven until around 3:30 a.m., at which point they went to another bar called Seoul Karaoke, which is adjacent to a restaurant called Sorabol.  They entered Seoul Karaoke but were told that it was closing, so they left.  As Beaudoin, Powell, and Gamboa were walking back to their vehicle in the parking lot, they heard someone yelling at them.  When they started approaching that person, they recognized him, later identified as

---

[3]     The Honorable Colette Y. Garibaldi presided.

5

DeLeon, as the person from Bar Seven with whom Powell and Beaudoin had a confrontation. According to Beaudoin, he, Powell, and Gamboa told DeLeon, "[n]o, everything is cool." As the three continued to approach DeLeon, DeLeon opened the trunk of his vehicle, pulled out a gun, and immediately started shooting at them. Beaudoin testified that one of the shots hit Powell in the chest, causing Powell to fall to the ground beside Beaudoin. Beaudoin then "went on the ground and tried to get away. And that's when [DeLeon] started shooting towards [Beaudoin and Gamboa]." DeLeon then drove away in his vehicle.

On cross-examination, Beaudoin testified that in two separate interviews with a detective on July 31, 2009, and at a prior proceeding on August 5, 2009, Beaudoin did not mention that DeLeon was yelling at him, Powell, and Gamboa before they approached DeLeon in the Sorabol parking lot.

### b. Chang's Testimony

Joseph Chang testified that he was with a group of friends that included Powell and Beaudoin at Bar Seven, but was not with them at the time of the shooting at the Sorabol parking lot. On cross-examination, Chang testified that Beaudoin came up to him at Bar Seven and told him that he wanted to hit DeLeon. Chang testified that shortly thereafter he heard a loud slap, and when he turned, he saw DeLeon's sunglasses "flying off." Chang also testified that on a separate occasion in 2007, he tried to break up an altercation between Powell and another individual,

which resulted in Powell striking Chang in the face.[4]

### c.  Akiona's Testimony

Lane Akiona testified that he arrived with Joe Chang at Bar Seven at around 2:00 a.m.  Akiona joined Powell, Beaudoin, and Gamboa at Seoul Karaoke after leaving Bar Seven.  Akiona testified that they were inside Seoul Karaoke for less than ten minutes, and once they left and were in the parking lot, he heard someone yelling.  Akiona testified that he saw DeLeon pull out a gun, and when he "felt the pop" of DeLeon's gun discharging, Akiona "crawled on the ground" and "tried to get out of the way."

### d.  Gamboa's Testimony

Gamboa testified that after being told that Seoul Karaoke was closing, he, Powell, Beaudoin, and Akiona were all walking together in the parking lot towards their vehicle to leave.  According to Gamboa, they heard somebody yelling, "'[y]ou guys wanna mess with me?' or '[y]ou guys wanna hit me?'"  DeLeon then fired three shots into the ground, and seconds later Gamboa saw Powell approaching DeLeon with "both hands up out to the side, slightly above shoulder height."  Gamboa testified that DeLeon shot Powell immediately after the first three shots were fired when Powell had his hands up.

A surveillance video of the Sorabol parking lot at the

---

[4]     Immediately prior to Chang's cross-examination, the attorneys approached the bench and discussed having the defense attorney elicit this testimony pursuant to the HRE Rule 404(b) notice it provided on March 24, 2015. The prosecuting attorney did not object to this testimony coming in. The circuit court made no ruling at that time, however, regarding the issue of first aggressor.

time of the shooting was played for the jury at trial during Gamboa's direct examination.

On cross-examination, Gamboa testified that in an interview with a detective on July 31, 2009, he did not mention that DeLeon was yelling at him, Powell, and Beaudoin before they approached DeLeon in the Sorabol parking lot.

### e.   Dr. Goodhue's Testimony

Forensic pathologist Dr. William Goodhue testified that he performed an autopsy on Powell, and that Powell sustained a single fatal gunshot wound to his heart, causing his death.  Dr. Goodhue also testified that Powell had 0.171 grams per deciliter of alcohol in his blood, and that what appeared to be gunshot residue on Powell's shirt was consistent with being shot from 6 to 8 inches away.

### 2.   Essential Testimony from Defense's Case-in-Chief

DeLeon testified that on the evening of July 30, 2009, he went "club hopping" and at around 2:30 to 3:00 a.m., he was at a bar called Bar Seven.  At Bar Seven, he saw an acquaintance, Chang, who introduced him to Powell.  As DeLeon and Powell shook hands, DeLeon heard Powell say something that included the word "Mexican."  DeLeon testified that he leaned forward to understand what Powell was saying, heard Powell say "fucking Mexican[,]" and was grabbed from behind the neck by Powell and put in a chokehold.  As DeLeon was struggling to break away from Powell's grip, DeLeon was hit on the side of his head by Beaudoin, causing

the sunglasses he was wearing to fall to the floor.  DeLeon testified that Chang then intervened, and told DeLeon to leave "before something worse happens to [DeLeon] because they have all their friends here."

DeLeon testified that he left in his vehicle and was heading home, but decided to go to another bar called Ocean's to see if his friends were there.  Once at Ocean's, he saw "[i]t was already closing down[,]" because the parking lot was empty, and decided to go to a restaurant called Sorabol "to get something to eat."  DeLeon parked in the Sorabol parking lot, then exited and locked his vehicle.  As he started walking towards Sorabol, he heard someone behind him say, "[t]here's that fucking Mexican."  DeLeon turned to see a group of four to five men walking towards him, and recognized that they were the same men from the Bar Seven incident earlier that night.  DeLeon considered running to Sorabol, but didn't think he could make it and thus headed back to his vehicle.  When the group of men were five to ten feet away from DeLeon, DeLeon "decided to pop [his] trunk with the fob on [his] key chain" and "pulled the 9-millimeter out."

DeLeon testified that he "just wanted to scare them" and "to protect [him]self."  After giving a verbal warning to stay back and firing a warning shot in the air, two men ran away but the other three were still proceeding in DeLeon's direction.  DeLeon then told them again to stay back and fired three shots

into the ground, but the men still did not stop approaching.[5]
DeLeon had his gun pointed at Powell, who was closest to him and
about an "arm's length" away.  According to DeLeon, Powell then
said, with his hands up, "[w]hat, you think one gun is going to
stop us all?"  DeLeon explained that he then shot Powell, and
that he only intended to hit him in the shoulder.  DeLeon
testified that he shot Powell because he was scared and wanted to
protect himself, and also that he did not intend to kill Powell.
DeLeon admitted on cross-examination that Powell's hands were
raised and he was unarmed when DeLeon shot him.  DeLeon testified
that Powell was "at arm's length" from DeLeon when he shot him,
and Powell did not try to take the gun away from DeLeon, although
Powell was close enough to do so.

### 3.  DeLeon's Request to Introduce Powell's and Beaudoin's Prior Violent Acts

After the defense presented its case, the circuit court
conducted a hearing outside of the jury's presence on DeLeon's
"Amended Notice of Intent to Rely on Hawai'i Rules of Evidence,
Rule 404(b) Evidence."  The defense sought to introduce evidence
of Powell's and Beaudoin's prior violent acts in order to support
the defense's position that Powell and Beaudoin, and not DeLeon,
were the first aggressors.

After hearing arguments from the parties, the circuit

---

[5]     On cross-examination, DeLeon testified that everyone except Powell
ran away after the warning shots were fired.

court denied DeLeon's request.[6]  The circuit court acknowledged

that it had reviewed State v. Lui, 61 Haw. 328, 603 P.2d 151

(1979), State v. Basque, 66 Haw. 510, 666 P.2d 599 (1983), and

State v. Maddox, 116 Hawaiʻi 445, 173 P.3d 592 (App. 2007).  As

to Beaudoin, the circuit court explained that:

> given the state of the evidence, with respect to the
> 404 evidence concerning prior bad acts to show the
> violent character as to Mr. Beaudoin, his conduct,
> which is in question, occurred at Bar 7.  It's remote
> in time, remote in place to the incident that actually
> involved Mr. Powell's death.

As to Powell, the circuit court explained that:

> [t]his is a -- on the basis of there being a first-
> aggressor issue, the evidence in the parking lot and
> this occurred an hour later, so it's a different
> location, there is a break in time, the evidence that
> has been produced fails to support a factual dispute
> as to who was the aggressor.
>
> The evidence is that Mr. Powell was the individual
> standing alone, palms-open gesture, no movement.
> This, and the testimony of the defendant that Mr.
> Powell made no movement other than to have his hand
> open and he was walking, the record does not appear to
> support that there is a factual dispute as to who was
> the aggressor.
>
> And the facts in Mr. DeLeon's matter, as [the State]
> indicated, are very similar to those that are cited in
> State v. [Lui], 61 Hawaiʻi 328.

(Emphasis added).

### 4.    Jury Instructions

The circuit court instructed the jury on Murder in the

Second Degree and the lesser-included offenses of: Manslaughter;

---

[6]    As previously noted, the circuit court allowed evidence of
Powell's 2007 assault on Chang during defense counsel's cross-examination of
Chang.

Assault in the First Degree; and Assault in the Second Degree based on intentionally, knowingly, or recklessly causing substantial bodily injury. The circuit court then instructed the jury regarding the offense of Carrying or Use of a Firearm in the Commission of a Separate Felony. The circuit court also instructed the jury on self-defense. Part of the court's self-defense instruction provided that "[t]he use of deadly force is not justifiable if the defendant, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter."

5. **Closing Arguments**

The State argued that this case was about DeLeon's revenge after being humiliated at Bar Seven. The State contended that DeLeon went to Sorabol to wait for Powell and his friends, threatened them by firing his gun, and intended to kill Powell when he shot him in the heart at close range. The State argued that DeLeon did not act in self-defense, asserting that "[s]hooting someone in the heart, an unarmed man who is approaching you with his arms up, that is not going to be justified . . . ." The State argued that DeLeon could have retreated to safety but chose not to, and emphasized that "[t]his was one on one, against an unarmed man, with his hands up, walking towards [DeLeon]."

Defense counsel focused on the credibility of Beaudoin, Akiona, Gamboa, and Chang by noting their drunkenness that night

12

and the inconsistencies between their testimonies and their statements given to police.  Defense counsel argued that the inconsistencies reflected bias, motive, and interest.  Defense counsel then argued that the Sorabol surveillance video showed that Powell was not alone, but was with others around him, and that Powell was moving toward DeLeon.  Counsel stated "there's only one guy moving forward with a purpose, accompanied by his friends."

Defense counsel also argued that DeLeon's use of force was justified in self-defense because he "reasonably believed that the use of protective deadly force was immediately necessary."  Counsel argued he was "in fear of getting serious bodily injury[,]" and only shot Powell at the last moment after repeated warning shots did not stop the group from continuing to approach him.  Counsel repeated the court's jury instruction that:  "[t]he use of deadly force is not justifiable if the defendant, with the intent of causing death or serious bodily injury, provoked the use of force."  Defense counsel then argued that DeLeon did not provoke Powell and his friends, and was justified in using deadly force in self-defense.

6.  **Verdict, Judgment, and Sentence**

The jury found DeLeon guilty of Manslaughter and of Carrying or Use of a Firearm in the Commission of a Separate Felony.  The circuit court sentenced DeLeon to a twenty-year term of imprisonment for each count, to run concurrently, with a

mandatory minimum term of fifteen years for the latter count.
DeLeon timely filed a notice of appeal.

## C.   ICA Proceedings

In its November 13, 2017 Summary Disposition Order, the
ICA affirmed the judgment of the circuit court.  The ICA
concluded, inter alia, that the circuit court did not abuse its
discretion in excluding evidence of Powell's and Beaudoin's prior
violent acts under HRE Rule 404.

## III.  Standard of Review

The trial court's determination of whether there is a
factual dispute as to who was the first aggressor for purposes of
HRE Rules 404 and 405 is reviewed de novo.  See Maddox, 116
Hawaiʻi at 460, 173 P.3d at 607.  Where such a factual dispute
exists, the extent to which evidence of the victim's prior
violent acts may be admitted is reviewed under an abuse of
discretion standard.  See Basque, 66 Haw. at 515, 666 P.2d at
603; Maddox, 116 Hawaiʻi at 460, 173 P.3d at 607.

## IV.  Discussion

In his application for writ of certiorari, DeLeon
presents the following question:

> Whether the ICA gravely erred in concluding that the
> trial court did not abuse its discretion in excluding
> Powell's and Beaudoin's criminal histories and prior
> acts of violence when the record clearly established
> there was a dispute as to who was the initial
> aggressor and when the trial court instructed the jury
> that DeLeon would be precluded from using deadly force
> if he was the initial aggressor.

14

A.   **Introducing Evidence of a Victim's Aggressive or Violent Character Under HRE Rules 404 and 405**

In Lui, we explained that under the common law, "a defendant who claims self-defense to a charge of homicide is permitted to introduce evidence of the deceased's violent or aggressive character . . . to show that the decedent was the aggressor." Lui, 61 Haw. at 329, 603 P.2d at 154.  However, we held that evidence of the decedent's character is not admissible when there is no factual dispute as to who was the first aggressor.  See id. at 330-31, 604 P.2d at 154.

Lui was later codified into HRE Rule 404(a)(2).  See HRE Rule 404 cmt. (1994); Basque, 66 Haw. at 513, 666 P.2d at 602.  HRE Rule 404 provides, in relevant part:

> **Character evidence not admissible to prove conduct; exceptions; other crimes.**
>
> (a) Character evidence generally.  Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> . . . .
>
> > (2) Character of victim.  Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]
>
> . . . .
>
> (b) Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible

15

> where such evidence is probative of another fact that
> is of consequence to the determination of the action,
> such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, modus
> operandi, or absence of mistake or accident.  In
> criminal cases, the proponent of evidence to be
> offered under this subsection shall provide reasonable
> notice in advance of trial, or during trial if the
> court excuses pretrial notice on good cause shown, of
> the date, location, and general nature of any such
> evidence it intends to introduce at trial.

(Emphasis added).**[7]**

If character evidence is admissible under HRE Rule 404(a)(2), the second step is to determine the methods by which the pertinent character trait of the victim may be proved, pursuant to HRE Rule 405.  See HRE Rule 405 cmt. (1994) ("Before [Rule 405] may be invoked, the question of substantive admissibility of character evidence must be decided according to Rule 404.").  HRE Rule 405 provides, in relevant part:

> **Methods of proving character.**
>
> (a) Reputation or opinion.  In all cases in which
> evidence of character or a trait of character of a
> person is admissible, proof may be made by testimony
> as to reputation or by testimony in the form of an
> opinion.  On cross-examination, inquiry is allowable
> into relevant specific instances of conduct.
>
> (b) Specific instances of conduct.  In cases in which
> character or a trait of character of a person is an
> essential element of a charge, claim, or defense,
> proof may also be made of specific instances of the
> person's conduct.

---

[7]    The commentary to HRE Rule 404(a)(2) notes that this subsection is mainly applicable to homicide and assault cases, and cites Lui as consistent with HRE Rule 404(a)(2).  See HRE Rule 404 cmt. (1994); Basque, 66 Haw. at 513, 666 P.2d at 602 (noting that the Lui rule regarding the use of a victim's prior violent acts to establish who was the first aggressor was later codified as HRE Rule 404(a)(2)).

16

(Emphasis added).

The Massachusetts Supreme Judicial Court summarized federal and state courts' interpretations of Rules 404 and 405 on the issue:

> Rules 404 and 405 of the Federal Rules of Evidence and similar State rules permit the defendant to introduce reputation and opinion evidence, but not specific acts of violence, to prove the victim's violent character. Despite this dominant interpretation of the Federal Rules of Evidence, some State courts have held that the victim's character is an "essential element" of a defendant's self-defense claim, allowing the use of specific acts evidence under the State equivalent of Fed. R. Evid. 405(b).  See, e.g., State v. Dunson, 433 N.W.2d 676, 680-681 (Iowa 1988); State v. Baca, 114 N.M. 668, 671-673, 845 P.2d 762 (1992).  Other States with versions of the Federal Rules of Evidence have crafted a compromise rule allowing evidence of the victim's specific acts only in the form of convictions.  Jurisdictions that have not adopted the Federal Rules of Evidence are split on the issue.

Commonwealth v. Adjutant, 443 Mass. 649, 661 n. 15, 824 N.E.2d 1, 11 n. 15 (2005) (some citations omitted).

In Basque, we addressed the State's contention that the rule in Lui, later codified as HRE Rule 404(a)(2), "allows only the use of character evidence -- to be proved by reputation or opinion -- and not evidence of 'other crimes, wrongs, or acts,' which is covered by Rule 404(b)."  66 Haw. at 513-14, 666 P.2d at 602.  We stated:

> In Lui, however, we treated general character evidence and specific prior acts (including those reflected in the victim's criminal record) the same for purposes of corroborating a defendant's self-defense claim as to who was the aggressor.  A growing number of other courts are in accord.  As Dean Wigmore has stated: "[T]here is no substantial reason against evidencing the character (of a deceased victim) by particular

17

> instances of violent or quarrelsome conduct. Such instances may be very significant; their number can be controlled by the trial court's discretion; and the prohibitory considerations applicable to an accused's character have here little or no force." 1 Wigmore on Evidence § 198 (3d ed. 1940) (emphasis in original).

Id. at 514, 666 P.2d at 602 (some citations omitted).

While this court did not explicitly hold that the aggressive or violent character trait of a victim is an essential element of a claim of self-defense, this court rejected the argument that the only admissible evidence of a victim's character was through reputation and opinion evidence. See id. ("we treated general character evidence and specific prior acts (including those reflected in the victim's criminal record) the same for purposes of corroborating a defendant's self-defense claim as to who was the aggressor."). Thus, we reiterated the holding in Lui that, once a factual question was raised as to who was the first aggressor, evidence of a victim's character could be presented through specific instances of conduct, such as the victim's prior violent acts. See id.

The methods for proving character are outlined in HRE Rule 405, which only allows for the use of specific instances of conduct to prove character when character is an essential element of, inter alia, a defense to the crime. It follows then, that if this court allows specific instances of a victim's conduct when a self-defense claim is raised and there is an issue as to who is the first aggressor, the victim's character is an essential

18

element of a claim of self-defense.[8]

Thus, we now explicitly hold that, when there is a factual dispute as to who was the first aggressor, a victim's pertinent character trait is an "essential element" to a claim of self-defense, and therefore, evidence of specific instances of conduct concerning that character trait, such as the victim's prior violent acts, may be admissible under HRE Rule 405(b).[9]

## B. Whether There Was a Factual Dispute as to Who Was the First Aggressor

DeLeon argues that the record shows that there was a factual dispute as to whether DeLeon, Powell, or Beaudoin was the first aggressor.[10] Our prior case law provides guidance on what

---

[8] Some state courts have similarly held that a pertinent character trait of a victim is an "essential element," under Rule 405, of a claim of self-defense. See, eg., State v. Dunson, 433 N.W.2d 676, 680-81 (Iowa 1988); Gottschalk v. State, 881 P.2d 1139, 1143 (Alaska Ct. App. 1994) (citing Loesche v. State, 620 P.2d 646 (Alaska 1980); Byrd v. State, 626 P.2d 1057 (Alaska 1980); Keith v. State, 612 P.2d 977 (Alaska 1980).

[9] The admission of evidence of specific instances of conduct would still need to comply with HRE Rules 401 and 403. See State v. Behrendt, 124 Hawai'i 90, 102, 237 P.3d 1156, 1168 (2010) (discussing HRE Rule 404(b) and stating that "'[p]rior bad act' evidence . . . is admissible when it is 1) relevant and 2) more probative than prejudicial.").

[10] As an initial matter, we hold that Beaudoin was a victim for purposes of HRE Rule 404(a)(2). DeLeon sought to introduce evidence of Beaudoin's prior violent acts to support his position that Powell was the first aggressor and not DeLeon. HRE Rule 404(a)(2) allows "evidence of a pertinent trait of character of the victim" to be introduced as an exception to the general rule against admitting character evidence.

When DeLeon was indicted, both Powell and Beaudoin were identified as victims in the indictment. In the 2010 trial, a jury found DeLeon guilty as charged on several charges that characterized either Powell or Beaudoin as a victim. This court vacated the circuit court's judgment of conviction and sentence on Counts II and IV, and remanded the case to the circuit court for trial on those counts. State v. DeLeon, 131 Hawai'i 463, 319 P.3d 382 (2014). Accordingly, DeLeon's conviction for Count VII (Reckless Endangering in the First Degree of Beaudoin and/or Akiona) was affirmed, and DeLeon's convictions
(continued...)

19

evidence raises a factual dispute as to who was the first aggressor.

In <u>Lui</u>, we determined that the record did not support finding a factual dispute as to who was the first aggressor. 61 Haw. at 330, 603 P.2d at 154. Lui was convicted of manslaughter for shooting the decedent. <u>Id.</u> at 328, 603 P.2d at 153. The evidence showed that hours before the shooting, Lui and the decedent got into a fist fight, at the end of which the decedent threatened to shoot Lui. <u>Id.</u> at 328-29, 603 P.2d at 153. Lui then went home to get a handgun, returned to the scene of the fight, and saw the decedent approaching him. <u>Id.</u> at 329, P.2d at 153. Lui walked toward the decedent and shot him from about 10 feet away because Lui thought the decedent was reaching for a gun. <u>Id.</u> The decedent was unarmed. <u>Id.</u> The trial court did not allow evidence of the decedent's prior bad acts to show that the decedent was the aggressor at the shooting. <u>Id.</u> On appeal, this court held that the trial court "properly excluded the proffered evidence to show by circumstantial proof that the

---

[10](...continued)
for Counts II (Murder in the Second Degree of Powell) and Count IV (accompanying Carrying or Use of Firearm in the Commission of a Separate Felony) were vacated and remanded. Thus, in the 2015 trial at issue in this appeal, the only charges remaining concerned Powell.

Beaudoin was a victim in this case. DeLeon was convicted of Reckless Endangerment in the First Degree of Beaudoin. But for the fact that two trials were conducted because of errors in DeLeon's first trial, charges listing Beaudoin as a victim would have also been presented to the jury in the 2015 trial. Accordingly, Beaudoin should have been considered a victim at the 2015 trial for the purposes of HRE Rule 404(a)(2) admission of character evidence of a victim. We need not consider whether other circumstances would allow the introduction of such evidence with regard to individuals who were not the "victim" of the charged offense.

deceased was the aggressor in the fatal incident.  The record does not support a factual dispute as to who was the aggressor." Id. at 330, 603 P.2d at 154.

In Basque, this court distinguished Lui and determined that there was a factual dispute as to who was the first aggressor.  66 Haw. at 512-13, 666 P.2d at 601-02.  The evidence showed that: Basque drove to the home of his former girlfriend, Delima, and called out to her while he was in his car with the door open.  Id. at 511, 666 P.2d at 600.  Delima's boyfriend, Pagharion, pushed Delima aside, shook Basque's car, and asked, "[w]hy the hell you keep on bothering her?"  Id. at 511, 666 P.2d at 601.  Basque testified that Pagharion was swearing and threatening to kill him as he came over, and that they both reached for the gun under Basque's driver's seat at the same time, causing the gun to discharge twice during their struggle. Id.  Delima and her brother both testified that Basque reached under the seat, shot Pagharion in the arm, and that Basque and Pagharion then struggled for the gun, which went off a second time, fatally wounding Pagharion in the chest.  Id.  The trial court granted the State's motion to preclude Basque from introducing Pagharion's criminal record[11] after balancing the

---

[11]     Pagharion's record included arrests for attempted murder and five counts of armed robbery, and his guilty plea to two of the robbery counts. Basque, 66 Haw. at 511-12, 666 P.2d at 601.

interests of the parties pursuant to HRE Rule 403[12] and holding that jurors might place too much emphasis on the criminal record. Id. at 512, 666 P.2d at 601.

This court distinguished Basque from Lui and determined that:

> [T]he evidence presented in the instant case is unclear and conflicting as to who was the aggressor. The testimony of appellant, witnesses to the shooting, and even the State's two experts, presents genuine disputes as to who attacked whom first, and how close and in what position the appellant and decedent were when the two shots were fired. Moreover, uncontroverted testimony was adduced that the deceased had drunk about eight beers that afternoon, and in approaching appellant, had pushed aside [his girlfriend] and shaken [appellant's] car. Given such testimony, it is evident that a factual question existed as to who was the aggressor in this case.

Id. at 513, 666 P.2d at 601-02.

This court concluded that the trial court "abused its discretion when it flatly prohibited appellant from arguing to the jury, or otherwise eliciting evidence of, the criminal history of the deceased. We cannot say beyond a reasonable doubt that such an abuse did not contribute to the jury's verdict." Id. at 515, 666 P.2d at 603.

In State v. Maddox, 116 Hawai'i 445, 460, 173 P.3d 592, 607 (App. 2007), the ICA held that the testimony of the defendant

---

[12]     HRE Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

can constitute evidence sufficient to support a finding that there is a dispute as to who was the first aggressor. In that case, the victim, Mota, was the new boyfriend of Maddox's ex-girlfriend, and Maddox had unexpectedly come to Mota's home in the late evening, which resulted in a confrontation between Maddox and Mota. Id. at 448, 173 P.3d at 595. Mota testified for the State that he asked Maddox to leave his home, to which Maddox responded by making "threatening moves toward Mota" and ultimately stabbing Mota in the chest. Id. at 460, 173 P.3d at 607. The circuit court did not allow Maddox to cross-examine Mota about his past to show his character for violence. Id. at 449, 173 P.3d at 596.

On appeal, Maddox argued that "Mota's testimony raised the factual issue as to whether Mota had been the first aggressor[.]" Id. at 460, 173 P.3d at 607. The ICA rejected that argument, and stated that "Mota's testimony did not raise a factual issue regarding who was the first aggressor but instead plainly showed that Maddox was the first aggressor." Id. The ICA noted that Maddox's subsequent testimony that Mota attacked him without provocation was "ample evidence" to support Mota being the first aggressor, however Maddox did not seek to recall Mota after Maddox testified. Id. The ICA therefore concluded that the circuit court did not abuse its discretion in excluding evidence of Mota's prior acts of violence because the requests to introduce that evidence "were made before evidence to support a

23

finding that Mota was the first aggressor had been introduced."
Id.

In the instant case, DeLeon testified that after he got out of his vehicle upon arriving at the Sorabol parking lot, he heard someone behind him say, "[t]here's that fucking Mexican."[13] He turned to see Powell and three to four others[14] approaching him, and DeLeon recognized the men from the incident earlier in

---

[13]    To the extent that DeLeon argues that the incident at Bar Seven establishes that Powell and Beaudoin were the first aggressors at the time of the shooting at the Sorabol parking lot, that argument is without merit because the events were sufficiently separated by time and distance.

In State v. Adam, the ICA considered whether the defendant's actions of first aggression extended to a later confrontation that gave rise to the charges brought against him. 97 Hawaiʻi 413, 38 P.3d 581 (App. 2001). In that case, Wentworth was picking ʻopihi along the Miloliʻi coastline when a rock struck his back. Id. at 415, 38 P.3d at 583. He looked up the cliff that fronted the coastline and saw Adam with a rock in his hand. Id. Wentworth climbed the cliff and approached Adam's house. Id. After "calling [Adam] out[,]" Wentworth proceeded to "[s]wear, yell, and fly rocks at . . . [Adam's] truck." Id. When a rock hit Adam's truck, Adam ran out of his house with a nine millimeter pistol, pointed it in Wentworth's direction, and fired. Id. Adam moved to introduce evidence of Wentworth's prior convictions in order to show evidence that he was the first aggressor. Id. at 416, 38 P.3d at 584. The ICA concluded that "there was no factual issue as to who, Wentworth or Adam, was the first aggressor. Wentworth admitted he was the aggressor and Adam responded by firing his gun." Id. at 418, 38 P.3d at 586. Accordingly, the ICA affirmed the trial court's denial of Adam's motion to introduce evidence of Wentworth's prior convictions. Id. at 422, 38 P.3d at 590.

The ICA rejected the argument that the first aggressor issue extended from Adam's initial rock-throwing from the cliff to the shooting outside Adam's house, concluding that Wentworth was the initial aggressor when he threw rocks at Adam's truck after he climbed up the cliff. Id. at 418, 38 P.3d at 586. The ICA did not, however, explain the basis on which it concluded that there was no extension of the first aggressor issue.

Here, there was a break in time between the two events of roughly one hour, in which DeLeon was going to go home, went to Ocean's, and then ultimately went to Sorabol to get something to eat. There was a more significant break in time here than in Adam, where the chain of events that unfolded after the initial rock-throwing were all part of one course of circumstance. The Bar Seven incident was therefore attenuated from the shooting at Sorabol, and the fact that Powell and Beaudoin were aggressors at Bar Seven does not extend to the incident in the Sorabol parking lot.

[14]    It is unclear from DeLeon's testimony whether Beaudoin was one of these people. Beaudoin, Akiona, and Gamboa testified that Beaudoin was present.

24

the evening when he was assaulted by Powell. At this point, DeLeon testified that Powell and the men with him were five to ten feet away from DeLeon. DeLeon thought about running to Sorabol, but he thought the group would catch him and assault him. For that reason, DeLeon instead decided to get his gun from the trunk of his vehicle. DeLeon told the group to stay back and fired a warning shot in the air, at which point two members of the group ran away. Powell and two others still continued to proceed in DeLeon's direction. DeLeon then gave another verbal warning and shot three times into the ground. Powell and the two others were still approaching him, and DeLeon pointed his gun at Powell. Powell put his hands up and said, "[w]hat, you think one gun is going to stop us all?" DeLeon admitted that when he shot Powell, Powell had his hands open and raised, was unarmed, and did not attempt to take the gun away from DeLeon. DeLeon testified that Powell was "at arm's length" from DeLeon when he shot him.

Generally, self-defense using deadly force is not a lawful action to stop a simple assault, and thus, there is no dispute as to who was the first aggressor. See HRS § 703-304(2) (use of deadly force justifiable if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy); cf. State v. Pearson, 288 N.C. 34, 40, 215 S.E.2d 598, 603 (N.C. 1975) (exception to general rule where "there is a great disparity in strength between the defendant and the assailant, or

25

where the defendant is attacked by more than one assailant.")

Under the totality of the circumstances, the situation in the instant case falls under the exception to this general rule. The following testimony, when viewed together, was sufficient to raise a factual dispute as to whether Powell or Beaudoin could be the first aggressor: (1) DeLeon, by himself, faced Powell and his group, which consisted of three to four people, including Beaudoin;(2) someone from that group said, "[t]here's that fucking Mexican"; (3) Powell, and possibly two others from the group, which may have included Beaudoin, continued to approach after DeLeon fired warning shots into the air and ground and told them several times to stay back; (4) as Powell continued to approach, Powell stated, "[w]hat, you think one gun is going to stop us all?" when he was within arm's length of DeLeon. While DeLeon used deadly force on an unarmed attacker, there is a factual dispute as to whether DeLeon was being attacked by multiple assailants, which is an exception to the general rule that a claim of self-defense fails when deadly force is used to stop a simple assault.

Thus, we conclude that the circuit court erred in finding that there was no factual dispute as to who was the first aggressor.[15] Since there was a factual dispute as to who was the

_____

[15] DeLeon makes an additional argument, based on Basque, that the circuit court's jury instruction on provocation established that there was a fact at issue as to who was the aggressor. In DeLeon's trial, as part of the circuit court's self-defense instruction, the court stated, "[t]he use of deadly force is not justifiable if the defendant, with the intent of causing
(continued...)

26

first aggressor, and DeLeon raised the claim of self-defense, the circuit court abused its discretion in categorically excluding evidence of Powell's and Beaudoin's prior violent acts. Given the conflicting evidence regarding the circumstances of the shooting, and the direct relevance of the excluded evidence to DeLeon's self-defense claim, we conclude that the error was not harmless, and that DeLeon's convictions must accordingly be vacated.[16] See Basque, 66 Haw. at 515, 666 P.2d at 603.

## V. Conclusion

For the foregoing reasons, we vacate the ICA's December 13, 2017 Judgment on Appeal and the circuit court's

---

[15](...continued)
death or serious bodily injury, provoked the use of force against himself in the same encounter."

In Basque, the trial court gave a similar instruction. 66 Haw. at 513, 666 P.2d at 602. After reviewing the testimony presented at trial, this court stated:

> Given such testimony, it is evident that a factual question existed as to who was the aggressor in this case. The trial court implicitly acknowledged as much when, as part of its "self-defense" jury instruction, it stated: "In order for the defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on him or have been the aggressor."

Id. (citation omitted).

Similarly here, while not dispositive on the issue, the circuit court's jury instruction supports a finding that there was a fact at issue as to who was the first aggressor.

[16] As this court noted in Basque, "[o]n remand, the trial court shall retain the discretion to determine to what extent, and in what manner, evidence of the deceased's criminal record may be allowed in and alluded to." 66 Haw. at 515, 666 P.2d at 603 (citation omitted). "Some of the factors the trial court may consider are the nature of the prior crimes, wrongs, or acts, their proximity in time to the present incident, and the amount and type of extrinsic evidence which will be needed to establish those acts." Id. at 515 n.6, 666 P.2d at 603 n.6.

August 5, 2015 Judgment, and remand the case for further proceedings consistent with this opinion.

| | |
|---|---|
| William H. Jameson, Jr.,<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Sonja P. McCullen<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

